**UNITED STATES of America,**

v.

**Kenneth MEADER, Defendant.**

**Criminal No. 95–25–B–H.**

United States District Court,
D. Maine.

Feb. 12, 1996.

Gail Fiske Malone, Assistant United States Attorney, Bangor, ME, for Government.

David M. Sanders, Livermore Falls, ME, for Defendant.

## ORDER

HORNBY, District Judge.

The Government has moved in limine to exclude the defendant's insanity defense and other evidence of his mental condition. On February 1, 1996, I conducted a hearing with the defendant Kenneth Meader present. At the hearing, the defendant proffered the testimony of psychologist Dr. Brian Rines who has interviewed, examined and tested Meader and examined discovery materials concerning the incidents that led to the various federal and state charges against Meader.

■ The Government attacked Dr. Rines's testimonial conclusions on several grounds, among them the limitations on his examination and testing of Meader; the fact that he did not interview or evaluate Meader till long after the incidents; his acceptance of various statements Meader made; the more limited statements Dr. Rines made in his earlier letter to Meader's lawyer (the Government considers it a report, but Dr. Rines disagrees); and his apparent discounting of certain other evidence.

All of these, I conclude, go to the weight of Dr. Rines's testimony and are matters for the jury, assuming that Dr. Rines's proposed testimony is otherwise admissible and, together with other evidence, raises a legitimate issue for the jury. I examine, therefore, whether Dr. Rines's testimony is inadmissible on other grounds.

### INSANITY DEFENSE

■ Meader has given notice, see Fed. R.Crim.P. 12.2, that he relies upon the defense of insanity. Federal law is clear that a defendant must prove his insanity defense by "clear and convincing evidence." 18 U.S.C. § 17(b). The elements of the defense are

that, at the time of the commission of the acts constituting the offense, the defen-

dant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a). Although Dr. Rines arguably has expressed various positions in his letter and his testimonial proffer and may accordingly be open to effective cross-examination, I am satisfied that he is prepared to testify that at the time of the offenses in question,[1] Meader suffered from one (and only one) mental disease or defect that was severe, specifically what Dr. Rines calls a transient psychosis, brief psychotic episode or brief reactive psychosis. Dr. Rines bases his conclusion on acceptable professional techniques, evaluations and measuring devices. Dr. Rines characterizes the strength of this conclusion as a "very high probability"—which, I am satisfied, is sufficient to get to the jury on the clear and convincing evidence standard. *See, e.g., United States v. Owens,* 854 F.2d 432, 435–36 & n. 8 (11th Cir.1988) (clear and convincing evidence means "convincing clarity," an "intermediate" standard satisfied by a "high probability"); *United States v. Barton,* 992 F.2d 66, 69 n. 6 (5th Cir.1993) ("clear conviction").

It is also Dr. Rines's professional opinion, however, that this brief psychotic episode did not prevent Meader from understanding the nature and quality of his acts. The psychologist's opinion about Meader's ability to appreciate the wrongfulness of his acts is more difficult to characterize within the statutory framework. Specifically, Dr. Rines testified that if someone had asked Meader during the events whether what he was doing was wrong, Meader would have replied yes; but that Meader's needs at the time were such that he could not stop to consider this issue and that he could not therefore "appreciate" the wrongfulness of his acts.[2]

In this context, I consider the impact of Fed.R.Evid. 704(b), which provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

In other words, by rule of evidence (actually enacted by Congress) Dr. Rines is not permitted to give the jury his opinion on Meader's ability to appreciate the nature and quality or wrongfulness of his acts. *United States v. Hiebert,* 30 F.3d 1005, 1008 n. 2 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 606, 130 L.Ed.2d 516 (1994) (bench trial); *United States v. Dubray,* 854 F.2d 1099 (8th Cir.1988). Thus, the question before me is whether to permit Dr. Rines to testify that Meader had a severe mental disease or defect, thereby perhaps allowing the jury to conclude that as a result Meader could not appreciate the nature and quality or the wrongfulness of his acts when, in fact, Dr. Rines's professional opinion is that the psychosis did not affect Meader's appreciation of the nature and quality of his acts and is at least ambiguous on the wrongfulness issue.

The Seventh Circuit has ruled that that is exactly what a trial judge must do. *United States v. West,* 962 F.2d 1243 (7th Cir.1992);

---

**1.** There is one remaining problem here. I do not know when Meader acquired the firearm that furnishes the foundation for the first count. As a convicted felon, Meader became guilty of the offense at the moment he obtained the gun. I am not sure that Dr. Rines's testimony about the brief psychotic episode includes the point, whenever it was, that Meader acquired the gun. If it does not, then Meader has no insanity defense on the first count. I assume, on the other hand, that the other two counts, which occurred during the kidnapping, are within the transient psychotic episode.

**2.** In this respect, the statutory language probably encompasses Dr. Rines's opinion. Congress adopted the language of the Model Penal Code rather than the M'Naghten rule ("appreciate" vs. "know") and thereby broadened the inquiry. Model Penal Code § 4.01 comment 2 at 166 ("[K]now" leads to an excessively narrow focus on "a largely detached or abstract awareness that does not penetrate to the affective level."); S.Rep. No. 307, 97th Cong., 1st Sess. 100–01 (1981) (Model Penal Code "uses the more affective term 'appreciate' for the more coldly cognitive 'know' of M'Naghten."), referred to in S.Rep. No. 225, 98th Cong., 2d Sess. (1984), *reprinted in,* 1984 U.S.C.C.A.N. 3182, 3404 n. 1; *accord ABA Criminal Justice Mental Health Standards* 7–6.1 at 343–44 (1989).

*United States v. Salava,* 978 F.2d 320, 322–23 (7th Cir.1992). The three judges in *West* expressed many misgivings, and two of them suggested ways to circumvent what seemed to them an unsatisfactory conclusion. The First Circuit has never directly ruled on the issue; two recent decisions suggest very divergent views. *Compare United States v. Valle,* 72 F.3d 210, 215 (1st Cir.1995) (expert may not testify on the ultimate issue of state of mind), *with United States v. Cartagena–Carrasquillo,* 70 F.3d 706, 712 (1st Cir.1995) (faulting the psychiatrist's report because there was nothing in it "which suggests that the defendant did not know or could not appreciate that selling cocaine was wrong").

I conclude, however, that the dilemma is not as severe as the Seventh Circuit makes out. The "pernicious" result that the court feared in *West* occurs from focussing solely on the expert psychiatrist's or psychologist's testimony. To be sure, Dr. Rines may not testify on whether Meader could appreciate the nature and quality or wrongfulness of his acts, but that does not prevent Meader from testifying. Meader may take the stand and testify that at the time he did not in fact understand the nature and quality or wrongfulness of what he was doing. The jury may disbelieve or believe that testimony. Dr. Rines could also be asked, after hearing Meader's testimony, whether what Meader described could, if believed, be explainable by the psychosis. If Dr. Rines then testified that it could not be caused by the psychosis (and no other doctor testified to the contrary) I would exclude the insanity defense because it was not medically supportable. Dr. Rines would still not have testified as to whether Meader at the time did or did not appreciate the nature and quality or wrongfulness of his acts. If, on the other hand, Dr. Rines testified that it could be caused by the psychosis, the insanity defense would go to the jury.

This outcome seems consistent with Congress's goal in preventing expert testimony on the ultimate issue—i.e., to preserve the jury's common sense role. This procedure lets the experts testify about what is a mental disease or defect and what is severe, matters not within the experience of ordinary jurors and thus deserving expert opinion. It prevents the experts from testifying about the ultimate issue the jury must decide—did this defendant in fact appreciate the nature and quality or wrongfulness of his acts at the time in question?—and lets the jury use its collective common sense and wisdom on this issue. Finally it allows expert testimony on the "causation" factor, i.e. whether the mental state as the defendant describes it, if believed, can scientifically be attributed to the severe mental disease or defect.

What all this means, however, is that in order to make out an insanity defense, a defendant like Meader may as a practical matter have to testify. If the expert is not allowed to testify on whether a defendant appreciates the nature and quality or wrongfulness of his acts and the defendant does not testify, a jury could reach the insanity conclusion only by speculating. Perhaps in some situations other lay witnesses can give nonhearsay testimony that would permit a jury to conclude circumstantially that a defendant did not appreciate the nature and quality or wrongfulness of his acts, but that will be the unusual case. There has been no suggestion yet that there are witnesses available to do that in this case.

As a result, the current status of this case is that the psychologist is able to testify, but his testimony alone will not be enough to let the insanity defense go to the jury.

██ Of course, if the defendant does take the stand, his testimony may provide the basis for the Government to introduce his previous convictions by way of impeachment. The Government has agreed that the mere fact that the defendant takes the stand will not justify, without more, admission of his previous record, but the nature of his testimony may change the analysis. *See e.g., United States v. Tracy,* 36 F.3d 187, 191–94 (1st Cir.1994), *cert. denied,* ——— U.S. ———, 115 S.Ct. 1717, 131 L.Ed.2d 576 (1995).[3]

---

**3.** Because the parties have stipulated that Meader is a convicted felon, the Government cannot introduce the previous convictions as an element of the offense under Count I. *See United States v. Tavares,* 21 F.3d 1, 3–6 (1st Cir.1994).

This also brings me to another dispute between the parties: whether the Government can explore the gruesome details of the sexually violent kidnapping that has generated these federal charges. Given the limits on Dr. Rines's (and any Government expert's) testimony, it appears that I will have to allow both sides some leeway on this subject in order to make out, or to counter, the defense that the defendant did not appreciate the nature and quality or wrongfulness of his acts. Evidence showing planning and intent, for example, would appear to be highly relevant in assessing the insanity defense. It might be argued that in the case of the Government, I should permit this only on rebuttal once it is clear that there is a viable insanity defense. But on the Count I charge of felon in possession of a firearm, the crime lasts as long as the possession of the firearm. Therefore, I will permit the Government to show the duration of the possession offense, and that will necessarily allow some evidence of what was going on.

Of course, if the defendant should admit to the federal crimes subject to the insanity defense, the trial could potentially begin with the defendant's case on insanity, to be followed by the Government's rebuttal.

### DIMINISHED CAPACITY DEFENSE

 The defendant has also indicated that his mental condition is material on the Government's burden of proof concerning the intent elements of the federal crimes. It is important to note that all three of these federal crimes have no scienter requirement that requires the Government to prove that the defendant knew that what he was doing was *wrong*. Instead, the felon in possession charge requires the Government to prove only that the defendant possessed what he knew was a firearm, not that it was wrong for him to do so. *United States v. Ramos*, 961 F.2d 1003, 1005 (1st Cir.), *cert. denied*, 506 U.S. 934, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992). The cocaine distribution charge requires the Government to prove only that the defendant knew that he was transferring cocaine or an equivalent substance, not that it was illegal. *United States v. Morales*, 577 F.2d 769, 773, 776 (2d Cir.1978). The charge

of using or carrying a weapon in connection with a drug transaction requires no more. *United States v. Brown*, 915 F.2d 219, 225 (6th Cir.1990).

In any event, the First Circuit has held that expert "evidence of diminished mental capacity is inadmissible to negate mens rea." *United States v. Shay*, 57 F.3d 126, 136 n. 9 (1st Cir.1995). Although that issue may be subject to reexamination, *id.*, that is a matter for the court of appeals, not this court. I would expect, therefore, *not* to allow Dr. Rines to testify on so-called diminished capacity independent of the insanity defense.

\* \* \* \* \* \*

The Clerk's Office shall schedule a conference of counsel to discuss further proceedings in this case.

So ORDERED.