United States Court of Appeals,

Eleventh Circuit.

No. 94-2759.

UNITED STATES of America, Plaintiff-Appellee,

v.

Stuart Martin WESTCOTT, Defendant-Appellant.

May 24, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-3-CR-OC-10), Wm. Terrell Hodges, Judge.

Before BIRCH, Circuit Judge, GODBOLD, Senior Circuit Judge, and O'KELLEY[*], District Judge.

O'KELLEY, District Judge:

Defendant-appellant Stuart Martin Westcott appeals pretrial rulings of the district court regarding evidence and jury instructions. Defendant entered a conditional plea, pleading guilty to two counts of falsely pretending to be a Special Agent of the United States Secret Service, while reserving his right to appeal the challenged pretrial rulings.

The main issue on appeal is whether the district court abused its discretion in ruling that, if defendant introduced certain psychiatric testimony, the court would instruct the jury regarding the insanity defense. We conclude that the district court did not abuse its discretion in prohibiting defendant from admitting the proffered testimony without an insanity defense instruction.

FACTS

Defendant Westcott was charged with two counts of falsely

_____

[*]Honorable William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

representing himself to be a United States Secret Service Agent, in violation of 18 U.S.C. § 912. The incidents giving rise to the charges occurred on January 5 and 6, 1994.

Pursuant to Rule 12.2(a) and (b) of the Federal Rules of Criminal Procedure, defendant timely filed notice of his intent to rely on the insanity defense and of his intent to introduce expert testimony relating to mental disease or defect. On February 24, 1994, at a status conference before the district court, defendant withdrew the notice of intent to rely on a defense of insanity, intending to use expert psychiatric testimony only to demonstrate that he lacked the necessary *mens rea* for the specific intent crime with which he was charged. The United States filed a motion *in limine* to prohibit or limit defendant's use of expert testimony.

On March 9, 1994, the district court held a hearing on pending motions *in limine.* Defendant proffered the testimony of Dr. Ernest Miller, a psychiatrist retained by defendant for the purpose of examining defendant. Dr. Miller testified that defendant suffered from bipolar disorder and that, due to altered brain chemistry, defendant believed himself to be a United States Secret Service Agent. When examined by defense counsel, Dr. Miller testified:

> Q: Now, Mr. Westcott's accused of representing himself to be a Secret Service Agent back in January 5th and January 6th of this year and attempting to have motel clerks accept his personal check for payment of a motel room. How does that—or does his representation that he was a Secret Service agent, does that relate in any way to his mental condition at the time?
>
> A: Yes. In my opinion it was a—this misidentification of himself, which I think he truly believed himself to be a member of the Secret Service, was a product of the altered brain chemistry which is associated with this genetically related metabolic defect, the—which causes what we, what we have labeled bipolar disorder to manifest itself.

He—he saw himself as a Secret Service agent only because his brain chemistry alters his ability to perceive himself correctly.

Q: Are you saying that Mr. Westcott did not know that he was lying?  Assuming that he's not a Secret Service agent.  He's not.  Are you saying that Mr. Westcott didn't understand, didn't know that he really wasn't a Secret Service agent?

A: In my opinion the patient believed himself to be a Secret Service agent and connected in some manner with the government, the Treasury Department and/or Secret Service.

* * * * * *

Q: Could a person suffering from Mr. Westcott's mental disease, in the condition he was at the time of the charged acts, be able to form or to have what the law refers to as criminal intent in your opinion?

A: No.  My opinion—his mental condition was such that he could not form the intent.

Q: Could a person, such a person suffering from the disease Mr. Westcott suffered and the condition he was in at the time, be said to knowingly and willfully commit the crime that he's charged with committing?

A: No.

Q: Could you briefly explain to the Court why not?

A: He truly believed himself to be a representative of the United States government in one of those agencies which I mentioned.  He believed this because of a state involuntarily placed upon him by way of his genetics and other features which factor into the development of bipolar disorder.

As a result of this, he was under the illusion, slash, delusion that he was a representative of the United States government, and the representations he made, he truly believed and did not—that these were not fabrications or, or designs on his part in order to manipulate others to gain a profitable end, or something of that sort.

Dr. Miller was questioned by the trial judge:

THE COURT:  All right.  Assume for the purpose of my next question then that the term "insanity" means a severe mental disease or defect as a result of which one is unable to appreciate the wrongfulness of his acts.

THE WITNESS:  Yes, sir.

THE COURT: All right. How does that definition of "insanity" differ, if at all, from the opinions you have given here concerning Mr. Westcott's mental state on or around January 5, 1994?

THE WITNESS: There is no bottom line difference as I perceive it, Your Honor.

On the basis of Dr. Miller's testimony, defendant requested that the jury be instructed that defendant's mental condition could be considered in determining whether the government had proven the required element of specific intent, and that no instruction be given as to the affirmative defense of insanity. On March 21, 1994, prior to the time opening statements were to be given, the district court ruled that Dr. Miller's proffered testimony constituted evidence of insanity, as defined by the Insanity Defense Reform Act, 18 U.S.C. § 17. Accordingly, the court ruled that, if defendant introduced Dr. Miller's testimony, the court would instruct the jury regarding the affirmative defense of insanity.

Defendant then entered a conditional guilty plea, reserving the right to appeal the district court's ruling with respect to Dr. Miller's testimony.

LEGAL ANALYSIS

I. *Standard of Review*

Questions of law are subject to *de novo* review. *United States v. Cameron,* 907 F.2d 1051, 1061 (11th Cir.1990). A district court's decision regarding the admissibility of psychiatric evidence is generally subject to the abuse of discretion standard of review. *Id.* A district court's refusal to give a requested jury instruction is reviewed under an abuse of discretion standard.

*United States v. Maduno,* 40 F.3d 1212, 1215 (11th Cir.1994), *cert. denied,* --- U.S. ----, 116 S.Ct. 123, 133 L.Ed.2d 72 (1995) (citation omitted). Reversible error occurs if the requested instruction was substantially correct and not addressed by other charges which were given, and if failure to give the instruction seriously impaired the defendant's ability to present an effective defense. *Id.*

II. *Did the district court abuse its discretion in ruling defendant's proffered psychiatric testimony to be admissible only if accompanied by an instruction regarding the insanity defense?*

The district court based its ruling regarding Defendant's proffered expert psychiatric testimony on the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17. The Insanity Defense Reform Act provides a statutory definition of insanity and establishes that insanity is an affirmative defense which the defendant must prove by clear and convincing evidence. The Act also eliminates all other affirmative defenses or excuses based upon mental disease or defect. Through the Act, Congress intended to prohibit the presentation of evidence of mental disease or defect, short of insanity, to excuse conduct. *United States v. Pohlot,* 827 F.2d 889, 897 (3d Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988).

The Act does not, however, completely eliminate the use of mental disease or defect evidence outside of attempts to establish the affirmative defense of insanity. The Act does not, by its terms, prohibit psychiatric evidence relevant to issues other than excuse or justification of otherwise criminal conduct. If a subjective state of mind is an element of a crime, evidence

regarding the existence or absence of that state of mind is evidence relevant to whether a crime was in fact committed. Psychiatric evidence which negates *mens rea* thus negates an element of the offense rather than constituting a justification or excuse. *United States v. Cameron,* 907 F.2d 1051, 1065 (11th Cir.1990). The plain language of the Act, as well as its legislative history, indicates that Congress did not intend to exclude psychiatric evidence which negates the *mens rea* element of a charged crime. *Id.* at 1064-65. Thus, in *Cameron,* this court held that the Insanity Defense Reform Act does not bar the admission of psychiatric evidence to negate *mens rea.* *Id.* at 1062.

The *Cameron* court noted that the use of psychiatric evidence to negate *mens rea* "may easily slide into wider usage that opens up the jury to theories of defenses more akin to justification." *Id.* at 1067 (quoting *Pohlot,* 827 F.2d at 904-05). Therefore, only psychiatric evidence which supports a "*legally acceptable* theory of lack of *mens rea* " should be admitted. *Id.* (emphasis in original). Psychiatric evidence is admissible to negate *mens rea* when the evidence focuses on the defendant's specific state of mind at the time the offense was committed. *Id.* at 1067. Evidence that a defendant lacks the capacity to form *mens rea* is to be distinguished from evidence that the defendant actually lacked *mens rea. Pohlot,* 827 F.2d at 905. While the two may be logically related, only the latter is admissible to negate the *mens rea* element of an offense. *Id.*

In the instant case, defendant Westcott was charged with a specific intent crime. Dr. Miller's proffered testimony provides

evidence both that defendant lacked the capacity to form the intent to commit the crime with which he was charged, and that defendant actually lacked such intent. Dr. Miller testified that defendant's "mental condition was such that he could not form the intent" required for the charged crime. Dr. Miller further stated that defendant actually "believed himself to be a Secret Service agent" and truly believed the representations he made which form the basis of the charges. Dr. Miller's testimony thus focuses on defendant's state of mind at the time of the allegedly criminal incidents, and therefore supports the contention that defendant actually lacked the *mens rea* required for the charged specific intent crime of impersonating a United States Secret Service Agent.

Accordingly, under *Cameron,* Dr. Miller's testimony constitutes evidence admissible to negate the *mens rea* element of the charged crime. And, the district court ruled Dr. Miller's testimony to be admissible. Defendant argues that the district court erred in refusing his proposed jury instruction regarding psychiatric evidence and *mens rea.* Notably, however, there is no evidence in the record that the district court intended to give a jury charge which prevented the jury from considering evidence of mental abnormality in determining whether the state had proven its case. *See Martin v. Ohio,* 480 U.S. 228, 233-34, 107 S.Ct. 1098, 1101-02, 94 L.Ed.2d 267 (1987) (noting the dubious constitutionality of instructing a jury to consider self-defense evidence only in regard to the affirmative defense of self-defense and not in regard to whether the government established its case). In this case, the district court merely ruled that Dr. Miller's testimony was only

admissible if accompanied by a jury instruction regarding the affirmative defense of insanity. In so doing, the court noted that its decision was made "in view of especially Dr. Miller's testimony that it's his opinion that, due to mental disease or defect at the time, the defendant was unable to appreciate the wrongfulness of his conduct, which is precisely the definition of "insanity' provided by Section 17 of Title 18." Dr. Miller testified that Defendant's mental condition which caused him to lack the *mens rea* required for the charged crime also caused Defendant to meet the test for insanity, as defined by the Insanity Defense Reform Act.

Defendant objects to the court's ruling that Dr. Miller's testimony was only admissible if accompanied by a jury instruction regarding the affirmative defense of insanity. Defendant's desire to argue that he lacked *mens rea* rather than that his conduct was excused by virtue of insanity is strategically warranted. The government bears the burden of proving beyond a reasonable doubt that a defendant had the required specific intent to commit a charged crime, yet the defendant is required to prove the affirmative defense of insanity by clear and convincing evidence. *See United States v. Moody,* 763 F.Supp. 589, 604 (M.D.Ga.1991), *aff'd,* 977 F.2d 1420 (11th Cir.1992), *cert. denied,* 507 U.S. 944, 113 S.Ct. 1348, 122 L.Ed.2d 730 (1993). Moreover, a jury finding of "not guilty by reason of insanity" results in civil commitment proceedings, while a finding that *mens rea* is lacking results in acquittal. *See id.*

We conclude that the district court did not abuse its discretion in ruling that Dr. Miller's testimony must be

accompanied by an insanity defense instruction. In enacting the Insanity Defense Reform Act, Congress changed the burden and standard of proof to require the defendant to prove the affirmative defense of insanity by clear and convincing evidence. *Cameron,* 907 F.2d at 1061. Congress did so based on testimony regarding the difficulty of proving a defendant sane beyond a reasonable doubt. *Pohlot,* 827 F.2d at 900. In this case, the district court determined that allowing defendant to present Dr. Miller's testimony only to negate *mens rea* would contravene the requirements of the Insanity Defense Reform Act. The court was persuaded by the fact that Dr. Miller's testimony did not relate only to *mens rea;* Dr. Miller also testified that defendant's mental condition met the definition of insanity under the Insanity Defense Reform Act. Therefore, admitting Dr. Miller's testimony solely as *mens rea* evidence would allow defendant to present insanity defense evidence while avoiding the burden of proof mandated by the Insanity Defense Reform Act.

Defendant also argues that the district court's ruling regarding the insanity defense instruction impermissibly imposed an insanity defense on him. Defendant relies on *United States v. Marble,* 940 F.2d 1543 (D.C.Cir.1991), for the proposition that the insanity defense cannot be imposed over the objection of a competent defendant. *Id.* at 1548. Yet defendant's reliance on the *Marble* case is misplaced. In *Marble,* the D.C. Circuit affirmed the district court's decision not to impose the insanity defense against the defendant's will. In the instant case, however, the district court did not insist that the insanity defense be raised

after defendant had waived the defense.  Rather, defendant sought to present evidence of insanity without assuming the burden of proof required by the Insanity Defense Reform Act.  The district court ruled defendant's proffered evidence to be admissible when accompanied by a proper jury instruction.  The district court did not improperly impose a defense on defendant.

## CONCLUSION

Because defendant's proffered psychiatric testimony both negates *mens rea* and provides support for an insanity defense, the district court did not abuse its discretion in ruling the psychiatric testimony to be admissible only if accompanied by an insanity defense instruction.  Accordingly, the judgment of conviction is AFFIRMED.