**UNITED STATES of America, Plaintiff,**

v.

**Peter PERALTA, Defendant.**

No. 95–691–Cr.

United States District Court, S.D. Florida.

June 12, 1996.

Ronald Dewaard, Assistant United States Attorney, Miami, FL, for Plaintiff.

Milton Hirsch, Miami, FL, for Defendant.

## *AMENDED OMNIBUS ORDER*

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the following motions: (1) Defendant's Motion for Appointment of a Jury Selection Consultant, filed April 22, 1996; (2) Defendant's Motion to Permit Voir Dire Questioning by Defendant's Counsel, filed April 22, 1996; (3) Defendant's Motion for Submission of a Juror Questionnaire, filed April 22, 1996; (4) Defendant's Motion for Leave to Use A/V Evidence at Trial, filed April 22, 1996; (5) Government's Motion to Redact Indictment, filed May 17, 1996; and (6) Government's Motion in Limine to Exclude Evidence of Diminished Capacity, filed May 17, 1996.

After a thorough review of the record and pleadings, and having considered the argument of counsel, the Government's Motion to Redact Indictment and Motion in Limine to Exclude Evidence of Diminished Capacity are GRANTED. The Defendant's Motion for Appointment of a Jury Selection Consultant and Motion for Submission of a Juror Questionnaire are DENIED. The Defendant's Motion to Permit Voir Dire Questioning by Counsel and Motion for Leave to Use A/V Evidence at Trial are GRANTED.

### I.

The Defendant, Peter Peralta, is alleged to have committed three armed bank robberies in Miami, Florida during July and August, 1995. The Grand Jury returned a six-count indictment against Peralta on September 8, 1995. Counts I, III and V of the indictment allege that he robbed a bank in violation of 18 U.S.C. § 2113(a) as well as 18 U.S.C. § 2113(d). Counts II, IV and VI allege that he used or carried a firearm during and in relation to each of the three bank robberies, in violation of 18 U.S.C. § 924(c). On October 23, 1995, the Court granted defense counsel's motion to schedule Peralta for a psychological examination. On or about October 25th, Dr. Leonard Haber issued his report, documenting, among other things, the Defendant's "obsession" with John Dillinger, the lingering effects of his marijuana use and his disturbed mental condition. Dr. Haber nevertheless concluded that Peralta was competent to stand trial. After subsequent evaluation and review, he reaffirmed this finding in a separate report dated December 11, 1995.

Peralta has not moved for a competency hearing, and has not signaled his intent to introduce expert testimony in support of an insanity defense. In late April, however, the Defendant—through a series of motions and communications with counsel for the United States—gave notice that he hopes to introduce lay testimony to establish that he was hampered by a diminished mental capacity at

the time of the alleged offenses.[1] Specifically, Peralta contends that he "suffers from an inability to formulate the specific intent required by the statutes pursuant to which he is charged." Def.Mot. for Appt. of Jury Sel.Consult., at 1. In response to the Defendant's position, the Government filed its motions to redact the word "willfully" from the bank robbery counts (I, III and V of the indictment) and to exclude diminished capacity evidence as to all counts. In the broadest sense, these motions present two issues: First, are the offenses alleged in the indictment "specific intent" crimes as to which a diminished capacity defense might be relevant; and second, assuming arguendo that the alleged offenses do require proof of specific intent, is Peralta's diminished capacity evidence admissible under the facts and circumstances of this case? The Defendant filed an omnibus response to the Government's motions on May 30, 1996. The Government replied on June 4, 1996, and the Court took argument on the motions at a status conference on June 5, 1996.

## II.

■ At the outset, we need to define the phrase "diminished capacity evidence" as it is used in the pending motions. Both parties invoke this phrase (as well as its counterpart, the "diminished capacity defense") without detailed explication. In *United States v. Cameron*, 907 F.2d 1051 (11th Cir.1990), the Eleventh Circuit explained that diminished capacity evidence, when not proffered to support an affirmative defense such as insanity, refers to psychological evidence that is introduced to cast doubt on the Government's claim that the defendant had the mens rea to commit the crime:

Regardless of the semantic "war of labels," both Congress and the courts have recognized the crucial distinctions between evidence of psychological impairment that supports an "affirmative defense," and psychological evidence that negates an element of the offense charged. "Affirmative defense" evidence of mental impairment, when specifically recognized and defined by the legislature, must be raised by the defendant and can "justify" or "excuse" conduct that is otherwise criminal. Psychological evidence that aids the trier in determining the defendant's specific state of mind with regard to the actions she took at the time the charged offense was committed, by contrast, is not an affirmative defense but is evidence that goes specifically to whether the prosecution has carried its burden of proving each essential element of the crime....

*Id.* at 1062–63. *Cameron* unequivocally holds that "[p]sychological evidence is relevant to mens rea *only when the defendant is charged with a specific intent crime.*" *Id.* at 1063 n. 20 (emphasis added); *accord, United States v. Castaneda–Reyes*, 703 F.2d 522, 525 (11th Cir.), *cert. denied*, 464 U.S. 856, 104 S.Ct. 174, 78 L.Ed.2d 157 (1983). The Court of Appeals applied this principle to confirm that, in passing the Insanity Defense Reform Act of 1984, 20 U.S.C. § 17 ("IDRA"), Congress did not intend to exclude "psychiatric evidence [offered] to negate specific intent." *Id.* at 1066–67; *see also United States v. Westcott*, 83 F.3d 1354 (11th Cir.1996) (following *Cameron* ).[2]

■ The first question becomes, therefore, when is a crime a "specific intent" crime? Specific intent is a slippery concept that eludes a precise, universal definition. If nothing else, however, the label "specific intent" connotes some kind or degree of criminal mens rea over and above the requirement that the defendant knowingly and voluntarily perform the proscribed act. As a rule of thumb, a law that calls for proof of knowledge and voluntariness, without more, is classified as a "general intent" statute, while a law that calls for proof of a more culpable

1. At the June 5th status conference, Defendant's counsel noted that he might call Dr. Haber as an expert in support of his client's diminished capacity defense.

2. The affirmative defense noted in *Cameron* is sometimes referred to as "diminished responsibility," and arises in cases where the defendant's alleged mental condition would completely absolve him of criminal responsibility regardless of whether or not his guilt could be proved. The IDRA eliminates all affirmative defenses or excuses (other than insanity) that are predicated upon the existence of a mental disease or defect. *See Westcott*, 83 F.3d at 1358 (noting that "[t]hrough the Act, Congress intended to prohibit the presentation of evidence of mental disease or defect, short of insanity, to excuse conduct").

mental state is classified as a "specific intent" statute. In its motions, the Government takes "specific intent" to be the equivalent of "willfulness," which this Circuit's pattern jury instructions define as a "bad purpose either to disobey or disregard the law." Eleventh Cir.Dist. Judges Ass'n, Pattern Jury Inst: Criminal Cases, Basic Inst. No. 9.1 (1985); *see also United States v. Phillips,* 19 F.3d 1565, 1577–78 (11th Cir.1994) (quoting this definition), *cert. denied,* —— U.S. ——, 115 S.Ct. 1312, 131 L.Ed.2d 194 (1995).[3] The term "bad purpose" does not mean evil motive, but rather the intent to act in deliberate or reckless disregard of the law (in the moral sense of the "law as a whole"). *Phillips,* 19 F.3d at 1578. Viewed in this context, the exclusion of diminished capacity evidence in non-specific intent cases makes sense. Diminished capacity evidence is psychological evidence tending to prove that the defendant suffered from a mental impairment or delusion that precluded him from formulating a "bad purpose." But since the Government is not required to prove that the defendant formulated a bad purpose in order to secure a conviction under a general intent statute, the probative value of diminished capacity evidence disappears.

### A.

We now turn to the question of whether the first paragraph of section 2113(a) creates a specific intent crime that requires proof of willfulness or some other mens rea over and above knowledge and voluntariness. Counts I, III and V of the indictment allege viola-tions of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2113(d). These Counts accuse Peralta of robbing the banks "knowingly and willfully, by force, violence and intimidation." The Government contends that the reference to "willfully" should be redacted, because the alleged offense is one of general intent and the inclusion of willfulness as an element of the crime is mere surplusage.[4]

The first paragraph of section 2113(a) provides in pertinent part:

> Whoever, by force and violence, or by intimidation, takes ... from the person or presence of another, or obtains ... by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank ... [s]hall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). Section 2113(d) enhances the penalties of section 2113(a) where the defendant uses a dangerous weapon to put another's life in jeopardy during the course of a bank robbery:

> Whoever, in committing ... any offense defined in subsection[ ] (a) ... of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be ... imprisoned not more than twenty-five years.

*Id.* at § 2113(d).[5] The Government insists that these provisions create a general, rather than specific, intent crime, and that the Unit-

---

**3.** During oral argument on the Government's motions, Defendant's counsel argued that, at least under some facts and circumstances, willfulness is not co-extensive with specific intent. The Eleventh Circuit has recognized that a statute containing the term "willfully" may create either a specific or a general intent crime, depending upon the language of the statute, the legislative purpose and the facts of the case. *See Phillips,* 19 F.3d at 1577–82 (holding that provision of Taft–Hartley Act applicable to any "person who willfully violates this section" states a general intent crime). For purposes of resolving the instant motions, however, our focus is not on whether 18 U.S.C. §§ 924(c), 2113(a) and 2113(d) require proof of willfulness; rather, the question is whether these statutes create "specific intent" crimes that demand proof of some kind of mens rea over and above mere knowledge and voluntariness.

**4.** The indictment does not expressly refer to the first (as opposed to second) paragraph of section 2113(a). For this reason, Peralta argues that we cannot know until trial whether the Government will proceed against him under the first paragraph. The indictment's reference to "force, violence and intimidation" and the "tak[ing]" of money makes clear, however, that Counts I, III and V are premised on the first paragraph. To the extent that the express language of the indictment leaves room for doubt, such doubt has been laid to rest by the Government's stance in these motions.

**5.** Peralta does not, and cannot, suggest that section 2113(d), standing alone, creates a specific intent crime.

ed States need only show that Peralta knowingly and voluntarily robbed the banks by force and violence or intimidation. We agree.

■ Our starting point is the familiar maxim that when a statute does not contain any reference to intent, general intent ordinarily is presumed, and the Government need not prove that the defendant acted with a bad purpose. *See, e.g., United States v. Martinez,* 49 F.3d 1398, 1401 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 749, 133 L.Ed.2d 696 (1996); *United States v. Brown,* 915 F.2d 219, 226 (6th Cir.1990). There is no Eleventh Circuit or former Fifth Circuit authority on the discrete question of whether the first paragraph of section 2113(a) creates a specific intent crime. We recognize that the current version of this Circuit's pattern jury instructions for section 2113(a) prosecutions includes a willfulness element. Eleventh Cir.Dist. Judges Ass'n, Pattern Jury Inst: Criminal Cases, Offense Inst. No. 52.1 (providing that the jury should be instructed that the Government must prove beyond a reasonable doubt the defendant engaged in the proscribed conduct "knowingly and willfully"). Notably, however, pattern instruction no. 52.1 does not contain an annotation to case law for its apparent assumption that "willfulness" is an element of the offense. Moreover, a preface to the pattern instruction manual makes clear that publication of the manual "shall not be construed as an adjudicative approval of the content of [the] instructions which must await case-by-case review by the [Circuit]." *Id.* at iii. Instruction no. 52.1 has not been approved or discussed by the United States Court of Appeals for the Eleventh Circuit.

Most if not all of the courts squarely considering the issue have concluded that the "force and violence or intimidation" clause of section 2113(a) does not require proof of specific intent. *See United States v. Fazzini,* 871 F.2d 635, 641 (7th Cir.), *cert. denied,* 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *United States v. Emery* 682 F.2d 493, 497 (5th Cir.) (noting that taking money from a bank through force or intimidation "is a general intent and not a specific intent crime"); *cert. denied,* 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 615 (1982); *United States v. Smith,* 638 F.2d 131, 132 (9th Cir.

1981); *United States v. Lewis,* 628 F.2d 1276, 1279 (10th Cir.1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981); *United States v. Brown,* 547 F.2d 36, 38–39 (3d Cir.1976), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977); *United States v. Johnston,* 543 F.2d 55, 58 (8th Cir.1976); *United States v. DeLeo,* 422 F.2d 487, 491 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); *United States v. Johnson,* 660 F.Supp. 786, 787–88 (D.Md.1987). These cases reason that nothing in the language or legislative history of the first paragraph of section 2113(a) can be read to impose a mens rea requirement over and above knowledge and voluntariness. The Government acknowledges a pair of opinions from the Second and Sixth Circuits that can be read to take the opposite view. In *Hamilton v. United States,* 475 F.2d 512, 515 (6th Cir.1973), the Sixth Circuit seemed to approve the district court's characterization of a bank robbery prosecution under section 2113(a) as requiring proof of a specific intent, at least where a voluntary intoxication defense is raised. In *United States v. Howard,* 506 F.2d 1131, 1133 (2nd Cir.1974), the Second Circuit reproached the district court for its failure to instruct the jury that "the taking [must be] done with wrongful intent, that is, knowingly and willfully." Neither of these opinions makes clear whether the defendant was charged under the first—as opposed to the second—paragraph of section 2113(a), and neither contains a meaningful discussion of the difference between specific and general intent. As a result, we do not believe that *Hamilton* and *Howard* constitute compelling precedent in light of more recent decisions from other Circuits.

Peralta argues that since the second paragraph of section 2113(a) contains a specific intent element, the first paragraph must be read to contain this element as well. The second paragraph of section 2113(a) proscribes the entering of a bank *"with intent to commit in such bank ...* any felony affecting such bank ... and in violation of any statute of the United States, or any *larceny"* (emphasis added). Unlike the first paragraph, the second does not require proof that the defendant used force and violence or

intimidation to perpetrate the offense. In *Nagell v. United States,* 392 F.2d 934 (5th Cir.1968), the former Fifth Circuit reversed the defendant's conviction under section 2113(a) after holding that the district court failed to properly instruct the jury as to willfulness. The Court noted that the indictment accused the defendant of "entering a federally insured bank with intent to rob in violation of 18 U.S.C. § 2113(a)." It then stated that "a specific intent to rob is required under 18 U.S.C. § 2113." *Id.* at 938. While it is true that *Nagell* made no express distinction between the two paragraphs making up subsection (a), the prosecution plainly arose under the second paragraph of 2113(a). It is telling that, when a subsequent Fifth Circuit panel indicated that proof of willfulness is not required in order to secure a conviction under the first paragraph, it did not even cite *Nagell. See Emery,* 682 F.2d at 497. Thus, we do not agree that *Nagell,* read in context and against the backdrop of other case law in this area, stands for the proposition that the first paragraph of section 2113(a) requires proof of specific intent.[6]

Congress' omission of any reference to "intent" in the first paragraph was a product of careful draftsmanship, and accommodated the need to create a different mens rea for the two offenses. After all, where force and violence or intimidation are involved, the act of taking money from a bank is so obviously dangerous to others that an unlawful or malevolent purpose can safely be assumed. By contrast, since entry into a bank can be perfectly innocent, the act of entering a bank should not be a crime unless it is accompanied by a bad purpose. *See DeLeo,* 422 F.2d at 491.

■ In his response to the Government's motions, Peralta maintained, without support, that the United States is not permitted to redact an indictment that it drafted. According to the Defendant, this step would violate the Fifth Amendment's guarantee that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const.Amend. V. During oral argument, however, Peralta's counsel explained that he had no objection to the redaction of the indictment. We nevertheless note that there is ample precedent for redacting an indictment to exclude a mens rea element not required by the applicable statute. *See, e.g., United States v. Cancelliere,* 69 F.3d 1116, 1121 (11th Cir.1995) (noting that "mere surplusage may be deleted from the indictment without error" and suggesting that the unnecessary inclusion of willfulness as an element of the offense can constitute surplusage); *see also Warner v. Zent,* 997 F.2d 116, 130 (6th Cir.1993) (affirming district court's decision to instruct jury that the applicable mens rea was reckless indifference rather than—as charged in the indictment—knowledge, and adding that "[t]here is a wealth of federal caselaw to the effect that overstatement of the pertinent mens rea in an indictment is 'mere surplusage' that neither obligates the prosecutor to prove more than the law requires nor obligates the trial judge to misinstruct the jury"), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994). Since the Government has moved to redact the indictment before trial, *Cancelliere* is not on point. In that case, the Eleventh Circuit found reversible error where the district court granted the Government's motion to redact a "surplus" reference to willfulness (in the context of a money laundering indictment) after the close of evidence, despite the fact the defendant had focused his defense on proving the absence of specific intent. The panel explained that "[a]lthough the inclusion of the term 'willful' was a mistake by the government, the charge was read to the jury at the beginning of the trial, the jury listened to Chancelliere attempt to prove he had not acted willfully, and then the court instructed them that they could convict without mentioning any requirement that they find he acted willfully." *Id.* at 1121. Here, there is

---

6. Other former Fifth Circuit decisions discuss a willfulness element in the course of reviewing armed bank robbery convictions under section 2113(a). *See, e.g., United States v. Poolaw,* 588 F.2d 103, 105 (5th Cir.), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979). These cases are distinguishable, however. *Poo-*

*law* and its kin do not take up the question of whether Congress intended to create a specific or general intent crime (*e.g.* whether willfulness should have been charged), but rather consider whether, since a willfulness charge was given, the evidence sufficed to support a conviction.

no risk of the kind of prejudice that led the *Cancelliere* panel to conclude that, under the facts and circumstances of that case, redacting the indictment was tantamount to "broadening the bases upon which the jury could convict" rather than eliminating mere surplusage. It follows that the indictment may be conformed to reflect the proper mens rea for prosecutions under section 2113(a)'s first paragraph.

To summarize, nothing in the language of the first paragraph of 18 U.S.C. § 2113(a) can be read to indicate that Congress intended to require proof of specific intent. We are aware of no case law expressly diverging from the prevailing view that the statute only requires proof consistent with that of a general intent crime. While it is true that the second sentence of section 2113(a) requires proof of willfulness, it does not follow that the first sentence (which does not refer to "intent" and includes an additional offense element) must be construed in the same manner. The reference to "willingly" in Counts I, III and V of Peralta's indictment is mere surplusage, and therefore shall, without objection, be redacted.

### B.

▉ Counts II, IV and VI of the indictment allege that, while committing the three bank robberies, Peralta used or carried a firearm in violation of 18 U.S.C. § 924(c). The indictment does not allege that the Defendant committed these crimes willfully. Nevertheless, Peralta asserts that section 924(c)(1) creates a specific rather than general intent crime. *See* Def.Resp., at 10 (arguing that "[t]he prosecution will be obliged to prove that at the time in question, Peter Peralta had the specific intent to use the gun in active furtherance" of the alleged robberies). We disagree.

Section 924(c)(1) provides in pertinent part that:

Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be [guilty of an offense against the United States].

18 U.S.C. § 924(c)(1). According to the Defendant, the phrase "in relation to" makes section 924(c)(1) a specific intent crime, because it contemplates a culpable mental state over and above knowledge and voluntariness. The phrase was added to section 924(c) as part of the Comprehensive Crime Control Act of 1984, replacing prior language that made it an offense to "carr[y] a firearm unlawfully during the commission of any felony." In *United States v. Brown*, the Sixth Circuit held that the addition of the "in relation to" clause did not transform section 924(c)(1), formerly assumed to be a general intent crime, into a specific intent crime:

The history of the 1984 amendments to section 924(c)(1) reveals that Congress was concerned that after it broadened the scope of the statute by including "crimes of violence" and cases where the firearms were carried lawfully, the statute could be applied to people who inadvertently possessed a firearm when they engaged in completely unrelated criminal conduct. The Senate Judiciary Committee's report indicates that Congress added the phrase "in relation to" to keep the statute focused on those persons whose firearms played a role in their criminal conduct.... [The defendant insists] this new element requires proof that the defendant carried the gun with the specific intent of using it in relation to the underlying drug charge and, therefore, section 924(c)(1) is a specific intent offense. We do not agree ... [and] hold that section 924(c)(1) is not a specific intent offense, as our review of the legislative history failed to turn up any evidence that supports Brown's assertion that the 1984 amendments elevated the offense from one of general to specific intent. In the absence of such evidence, we adhere to the general rule of construction of criminal statutes that provides that when a statute does not specify a heightened mental element such as specific intent, general intent is presumed to be the required element.

Brown argues that it is circular and self-contradictory to hold that section 924(c)(1) is a general intent crime and at the same time require a showing of a relationship between the firearm and the predicate gun crime.... [But] [i]n demanding a showing of "specific intent," Brown asserts that more should be required than a relation-

ship between the gun and the crime; he demands a concrete showing that blends the gun, the crime and the defendant's specific intentions into the conduct that constituted the predicate offense. The statute, however, is satisfied with a sturdy, subtle spider's web.... In conclusion, we hold that the offense set forth in section 924(c)(1) is not a crime of specific intent.

915 F.2d at 224–226 (citations omitted). Other courts have agreed that section 924(c)(1)'s "in relation to" clause is concerned with the causal nexus between the firearm and the alleged crime of violence, rather than the link between the firearm, the alleged crime of violence and the actor's state of mind. *See, e.g., United States v. Wilson,* 884 F.2d 174, 178–79 (5th Cir.1989); *United States v. Meader,* 914 F.Supp. 656, 660 (D.Me.1996). We find the reasoning of these cases to be persuasive, and confirm that the phrase "in relation to" cannot be read to evince a Congressional intent to require proof of some kind of specific intent in order to secure a conviction under section 924(c). We note that Peralta fails to cite a single case supporting his proposed reading of the statute.

The Defendant next suggests that the United States Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) somehow imposes a willfulness requirement on prosecutions under section 924(c). In *Bailey,* the Supreme Court held that a conviction for "use" of a firearm within the meaning of section 924(c)(1) requires sufficient proof that the defendant actively employed the weapon rather than merely possessing it. —— U.S. at —— —— ——, 116 S.Ct. at 506–09. *Bailey* provides an interpretation of the term "use," and reflects the Court's concern that the trend toward a broad construction of the word threatened to erase the distinction between "use" and "carry." Justice O'Connor's opinion does not discuss the remaining elements of the offense, or otherwise shed light on the level of mens rea needed to secure a conviction under 924(c)(1). Notably, the Defendant is unable to point to a single post-*Bailey* case suggesting that section 924(c)(1) is now a specific intent crime. *Compare*

*Meader,* 914 F.Supp. at 660 (continuing to describe section 924(c) as a general intent crime). For all of the foregoing reasons, we conclude that Peralta's alleged violations of section 924(c)(1) are not specific intent offenses that require proof of a bad purpose.

### C.

■ Assuming that neither section 2113(a) nor section 924(c)(1) are crimes of specific intent, is diminished capacity evidence nevertheless relevant to the prosecution of a general intent crime? Plainly the answer is no. As discussed above, the Eleventh Circuit follows the universal rule that diminished capacity evidence is relevant only in the context of a specific intent crime, where the Defendant's formulation of an unlawful or malevolent purpose must be established by the Government. *See Westcott,* 83 F.3d at 1357–59; *Cameron,* 907 F.2d at 1063; *accord, Fazzini,* 871 F.2d at 641; *United States v. Twine,* 853 F.2d 676, 678 (9th Cir. 1988). For this reason, courts in other Circuits have refused to permit evidence supporting a diminished capacity defense when raised in opposition to alleged violations of the first paragraph of section 2113(a). *See, e.g., Fazzini,* 871 F.2d at 641 (evidence of diminished capacity irrelevant); *Smith,* 638 F.2d at 132 (same); *see also Meader,* 914 F.Supp. at 660 (excluding diminished capacity evidence in a section 924(c)(1) case). Peralta makes no attempt to explain or distinguish the logic of these opinions. Instead, he urges us to ignore binding Eleventh Circuit precedent by holding that the distinction between specific and general intent is pure "gibberish" and that diminished capacity evidence may be relevant to all mens rea issues—even if the alleged offense requires no proof of a specific intent. This argument is untenable. Thus, to the extent that Peralta seeks to introduce psychological evidence for the purpose of establishing that he lacked a sufficiently culpable mental state to commit the charged offenses, the evidence is *per se* irrelevant and inadmissible since the charged offenses do not require proof of specific intent.[7]

---

7. Peralta does not suggest that his proposed diminished capacity evidence will undermine the Government's proof that he knowingly and voluntarily committed the acts delineated in the indictment.

## III.

Even if we were to find that either section 2113(a) or section 924(c) creates a specific intent crime, Peralta's proposed evidence would not be admissible under the facts and circumstances of this case. Once again, the Eleventh Circuit's reasoning in *Cameron* and *Westcott* provides the framework for our analysis. In *Cameron*, the defendant was charged with possession with intent to distribute crack cocaine, which the parties agreed required proof of specific intent as the mens rea for the offense. The defendant sought to introduce psychiatric evidence regarding her schizophrenia in order to show diminished capacity. The district court excluded the evidence, and the Circuit affirmed, holding that the district court did not abuse its discretion. In reaching this conclusion, the panel found that evidence of schizophrenia would "merely present a dangerously confusing theory of defense more akin to justification and excuse" as opposed to merely rebutting the Government's proof of specific intent. 907 F.2d at 1067–68. The panel offered the following comment on the limited circumstances where admission of diminished capacity evidence might be proper:

"Only in the rare case ... will even a legally insane defendant actually lack the requisite mens rea purely because of a mental defect." When a defendant claims to have psychiatric evidence that she "lacked the capacity" or was "incapable" of forming the intent necessary for the crime charged, most often that defendant is speaking of an incapacity to reflect or control the behaviors that produced the criminal conduct. Such evidence is not "psychiatric evidence to negate specific intent" and should not be admitted. Otherwise,

The insanity defense [will be] improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a "diminished responsibility" or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony.

[quoting Senate report on the IDRA]. Evidence offered as "psychiatric evidence to negate specific intent" is admissible, however, when such evidence focuses on the defendant's specific state of mind at the time of the charged offense.... Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury[ ] from focusing on the actual presence or absence of mens rea, and (3) "may easily slide into wider usage that opens up the jury to theories of defense more akin to justification [or excuse]," district courts must examine such psychiatric evidence to ascertain whether it would, if believed, "support a *legally acceptable* theory of lack of mens rea." ... The proper focus should be on the proffered link between the specific psychiatric evidence offered and the mens rea at issue in the case.

*Id.* at 1066–67 and n. 31 (citations omitted) (emphasis in original). In *Westcott*, the defendant was charged with falsely representing himself to be a United States Secret Service agent, in violation of 18 U.S.C. § 912. Westcott indicated his desire to use expert psychiatric testimony to demonstrate that he lacked the specific intent needed for a conviction under the statute. The Government moved in limine to exclude this evidence. At a pre-trial hearing on the motion, Westcott's expert testified that the defendant suffered from a bipolar disorder, as a result of which he truly believed he was a Secret Service agent. The district court ruled that the proffered evidence would be admissible only in connection with an insanity defense, which Westcott did not intend to pursue. Westcott then proceeded to enter a conditional guilty plea and appeal the district court's evidentiary ruling.

The Eleventh Circuit affirmed the district court's disposition of the motion in limine. The panel quoted at length from *Cameron*, and emphasized that evidence tending to prove a defendant lacked the capacity to form mens rea, unlike evidence tending to prove that the defendant actually lacked mens rea when he committed the alleged crime, is inadmissible. 83 F.3d at 1358 (adding that "[w]hile the two may be logically related, only the latter is admissible to negate the mens rea element of an offense"). After summarizing a transcript of the expert's testimony, the Circuit acknowledged that the proffered evidence went to both lack of mens rea and incapacity to form mens rea.

Nevertheless, it agreed with the district court that, reduced to its core, the testimony was calculated to present an insanity defense through the back door of rebutting specific intent:

> In this case, the district court determined that allowing defendant to present Dr. Miller's testimony only to negate mens rea would contravene the requirements of the Insanity Defense Reform Act [which requires the defendant to prove the affirmative defense of insanity by clear and convincing evidence]. The court was persuaded by the fact that Dr. Miller's testimony did not relate only to mens rea; Dr. Miller also testified that defendant's mental condition met the definition of insanity.... Therefore, admitting Dr. Miller's testimony solely as mens rea evidence would allow the defendant to present insanity defense evidence while avoiding the burden of proof mandated by the [IDRA].

*Id.* at 1359.

As *Westcott* suggests, the *Cameron* standard is very difficult for a defendant to meet when the essence of his evidence is that, because of a mental disease or defect, he was unable to appreciate the consequences of his action. In *United States v. Pohlot*, 827 F.2d 889 (3d Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988), for example, the Third Circuit, applying the principle subsequently adopted by this Circuit in *Cameron*, upheld the district court's exclusion of expert and lay diminished capacity evidence. The defendant offered this evidence to show that he lacked the specific intent to conspire to kill his wife, because he did not grasp the consequences of hiring someone to kill her. According to the defendant, the murder-for-hire plot was a "fantasy" borne of his wife's physical and emotional abuse, and was perceived as a feeble and misguided "attempt to fight back." *Id.* at 891–94. The Third Circuit held that this evidence was excludable, adding that while the testimony may have shed light on the defendant's ability to consciously reflect on

the consequences of his actions, it did not support a legally acceptable theory of lack of mens rea. The court noted that the record made clear the defendant both (1) intended to arrange the murder and (2) recognized that the act was unlawful. *Id.* at 905–06.

The reasoning of *Cameron, Westcott* and *Pohlot* accommodates Congress' concern—embodied in the IDRA—that diminished capacity arguments should be raised either (1) at the outset of the case under the rubric of competency to stand trial, or (2) be presented to the jury as an affirmative defense of insanity, with appropriate notice to the prosecution and subject to a clear and convincing standard of proof. In the instant case, Peralta did not request a competency hearing, and chose not to pursue an affirmative defense of insanity. His present quandary is, therefore, a product of these strategic decisions.

In his response, Peralta does not cite, let alone discuss, *Cameron*, and does not articulate a legally acceptable theory of lack of mens rea. Prior to the June 3d status conference, he had neither identified the specific items of lay evidence that he plans to offer nor discussed how he expects to admit these unspecified items at trial. At the status conference, however, Peralta's counsel explained that he hopes to show, among other things, that Peralta suffered from a persecution mania, was given to violent outbursts followed by fits of lethargy and was incapable of even conceiving a plan for using the firearms during the alleged robberies. For the most part, this appears to be just the kind of evidence that *Cameron* suggests should be excluded in a non-insanity case. In other words, even assuming that the indictment accuses Peralta of specific intent crimes (and we have found that *none* of the charges here require proof of specific intent), the Court is unpersuaded that the proffered psychiatric evidence supports a legally acceptable theory that Peralta did not perform the bank robberies with a bad purpose (*e.g.* an intentional or reckless disregard of "the law").[8]

---

**8.** Prior to the status conference, Peralta's single argument against the motion in limine seemed to be that the admissibility of the proposed diminished capacity evidence should not be resolved prior to the crucible of trial. According to Peralta, the probative value of the evidence should be assessed on a piecemeal basis at the time it is

offered. The Government rightly responds that unless a "legally acceptable theory" is presented at this stage, the specific nature or context of the proposed psychological evidence is of no moment. *Cf. Cameron*, 907 F.2d at 1067 (noting that diminished capacity evidence "should be evaluated outside the presence of the jury").

In reaching this conclusion, we recognize that Peralta may now be left without a viable defense. To this end, we note that the proffered diminished capacity evidence may be admissible on some theory and for some purpose *other than* to establish that he lacked the mens rea needed to commit the alleged offenses. Moreover, we do not preclude Peralta from revisiting the issues discussed in this Order at appropriate junctures during the crucible of trial. That being said, we see no basis, at this point, to admit the proposed lay psychological evidence under *Cameron.*

## IV.

The Defendant has moved for appointment of a jury selection consultant in order to assist him during the voir dire process, given the unique issues raised in a diminished capacity case. Peralta also has moved for leave to submit a written questionnaire to prospective jurors, again in an effort to ensure that jurors will look on his diminished capacity defense with an open mind. Because we find that diminished capacity evidence is not admissible under the facts and circumstances of this case, the *raison d'etre* of Defendant's motions disappears. However, the Court is aware of no reasoned basis to refuse Peralta's applications for leave to use audio-visual equipment and leave to permit counsel to conduct a portion of the voir dire.

It is therefore

ORDERED AND ADJUDGED that the Government's Motion to Redact Indictment is GRANTED, and the word "willfully" shall be struck from Counts I, III and V of the indictment. The Government's Motion in Limine to Exclude Evidence of Diminished Capacity is GRANTED. Subject to possible reconsideration during trial, the Defendant shall not be permitted to introduce lay or expert psychiatric evidence in an effort to establish that he lacked the mens rea needed to commit the alleged offenses. The Defendant's Motions for Appointment of a Jury Selection Consultant and Motion for Submission of a Juror Questionnaire are DENIED. The Defendant's Motion to Permit Voir Dire Questioning by Defendant's Counsel and Motion for Leave to Use A/V Evidence at Trial are GRANTED.

DONE AND ORDERED.