**UNITED STATES of America,**

v.

**Daniel D. RICHARDS, Defendant.**

**Criminal No. 95–255(HAA).**

United States District Court,
D. New Jersey.

May 28, 1998.

Howard Wiener, United States Attorney's Office, Newark, NJ, for U.S.

Jerome A. Balloratto, Trenton, NJ, for Defendant.

## OPINION

ACKERMAN, District Judge.

On May 15, 1998, this court concluded a three day hearing on the admissibility of expert testimony under *United States v. Pohlot*, 827 F.2d 889 (3d Cir.1987).[1] For reasons which I will detail further, defendant's mental disease evidence is **INADMISSIBLE.**

### I. Background

The eighteen count indictment alleges that the defendant, Daniel Richards, embezzled money in his capacity as the general partner of six limited partnerships formed to build low income housing under the Rural Rental Housing Program ("RRH") administered by the Farmers Home Administration ("FmHA") in violation of 18 U.S.C. §§ 666(a)(1)(A), 658. According to the Indictment, the defendant was the general partner of six limited partnerships each of which was formed to build separate rural housing projects. The housing projects rented to low income tenants at rates below that of the prevailing market. As part of the agreement, the FmHA subsidized the interest payments on construction loans used to build the projects. The defendant was also required to maintain two accounts: a General Operating Account and a Reserve Account. The General Operating Account held the deposits from all project revenues and the Reserve Account contained funds for meeting capital expenses. By design, a fixed amount

---

1. The government did not express any objections to the testimony on the grounds of *Daubert v.* *Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

of money was transferred annually from the General Operating Account to the Reserve Account for the purpose of satisfying these capital expenses.

The Indictment alleges that the defendant violated 18 U.S.C. §§ 666(a)(1)(A), 658 by making unauthorized withdrawals from Reserve Accounts and failing to transfer monies to the Reserve Account. Counts 1–12 allege violations of § 666(a)(1) which provides that:

> Whoever ... being an agent of an organization ...[that benefits more than $10,000 from a Federal program] ... embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that is valued at $5,000 or more, and ... is owned by, or is under the care, custody, or control of such organization, government, or agency [shall be guilty of an offense against the United States].

18 U.S.C. § 666(a)(1)(A).

Counts 12–18 allege violations of 18 U.S.C. § 658 which provides that:

> Whoever, with intent to defraud, knowingly conceals, removes, disposes of, or converts to his own use or to that of another, any property mortgaged or pledged to, or held by, ... the Secretary of Agriculture acting through the Farmers Home Administration ... [shall be guilty of an offense against the United States]

18 U.S.C. § 658.

Prior to trial, the court held a hearing to determine whether evidence of the defendant's alleged "major depressive disorder" should be admitted for the purpose of negating the mens rea element of the crimes charged. *See United States v. Pohlot,* 827 F.2d 889 (3d Cir.1987).

*II. Pohlot*

■ When confronted with mental disease evidence, Congress has instructed courts to be extremely cautious. Through the Insanity Defense Reform Act of 1984, Congress significantly limited the role played by mental disease evidence in criminal trials. While the Act establishes insanity, as that term is defined by the statute, as a viable affirmative defense, it has eliminated all other affirmative defenses or excuses based upon mental disease or defect. *See United States v. Westcott,* 83 F.3d 1354, 1357–58 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 269, 136 L.Ed.2d 193 (1996). Nevertheless, defendants may still introduce mental disease evidence for the purpose of negating the mens rea element of the offense. *See Id.; Pohlot, supra,* at 897; 18 U.S.C. § 17(a). In this context, admissibility turns on the rules of evidence rather than upon a determination of what constitutes a legitimate and viable defense.

■ Generally, it is "[o]nly ... the rare case" where "even a legally insane defendant actually lacks the requisite mens rea purely because of mental defect." *Id.* at 900. Mental illness hardly ever "renders a person incapable of understanding what he or she is doing." *Id.* "[A]ny showing of purposeful activity, regardless of its psychological origins," satisfies the mens rea element. *See Id.* at 904. The jurisprudence cautions against falling into the trap of permitting a defendant to use "mental capacity evidence to limit his criminal responsibility for his deliberate and purposeful activity." *See United States v. Childress,* 58 F.3d 693, 730 (D.C.Cir.1995), *cert. denied,* 516 U.S. 1098, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996). Courts must not allow the insanity defense to be "improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a 'diminished responsibility' or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony." *United States v. Cameron,* 907 F.2d 1051, 1066 (11th Cir.1990). When a defendant

> claims to have psychiatric evidence that she "lacked the capacity" or was "incapable" of forming the intent necessary for the crime charged, most often that defendant is speaking of an incapacity to reflect or control the behaviors that produced the criminal conduct. Such evidence is not "psychiatric evidence to negate specific intent" and should not be admitted.

*Id.*

There is an important distinction between "evidence that a defendant lacks the capacity to form mens rea and evidence that the defendant actually lacked mens rea at the time of the offense." *Westcott, supra,* at 1354. That does not mean that there should be an absolute bar on all "lack of capacity" evidence, but rather, the court must focus "on the proffered link or relationship between the specific psychiatric evidence offered and the mens rea at issue in the case." *See Childress, supra,* at 730 (quoting *Cameron, supra,* at 1067 n. 31).

In *Pohlot,* the Third Circuit developed a framework of analysis which is comprised of the following two elements:

*First,* whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom; and

*Second,* whether it would aid the jury in deciding the ultimate issue.

*See Pohlot, supra,* at 905.

Thus, the court must find that the evidence addresses the defendant's specific state of mind at the time of the charged offense and ultimately, "support[ ] a legally acceptable theory of mens rea." *Pohlot, supra,* at 905–06; *see Cameron, supra,* at 1066.

In *Childress,* the court found that evidence of defendant's mental incapacity was admissible to negate the specific intent element of the charged narcotics conspiracy. From the evidence, the court concluded that the defendant was so mentally incapacitated that he could not read words such as "animal" or "himself," could not accurately report the direction of the sun's rising, or the general use of a thermometer, and who could not define the words "fabric," "enormous" or "conceal." *Childress, supra,* at 729. As the court noted, the defendant's mental capacity

> [did] not excuse him from culpability for his activity—possessing and distributing drugs ... [but] it may well be relevant to whether the government proved an ele-

ment of the conspiracy charge that in committing such acts [defendant] entertained the specific intent to further the purposes of the conspiracy—and thus to whether [the defendant] conspired to possess and distribute drugs.

*Childress, supra,* at 730.

Similarly, Richards would like to argue that his mental disease evidence is relevant to negating his specific intent. But, he may not use mental disease evidence to excuse his culpability.

### III. Applying Pohlot to The Instant Case

The instant case involves two specific intent crimes [2] for which a defendant may introduce evidence of mental abnormality to negate the specific intent element of those crimes. Here, the court heard testimony from Dr. Philip Werner, a licensed practicing psychiatrist, who began treating the defendant for depression on November 8, 1990 and from Mr. John Schumacher, a longtime business associate and friend. Mr. Schumacher worked with the defendant on the housing projects which are apart of this case.

When Dr. Werner first met the defendant in November 8, 1990, it had been at least eight months since the defendant had allegedly committed the offenses. According to Dr. Werner, the defendant suffered from Major Depressive Disorder which substantially impaired the defendant's judgment and his concentration and produced "passive suicidal thoughts." After their first meeting, the defendant entered the hospital for several days. Werner believes that the defendant had been suffering from the disease since early 1989. When he spoke about how the disease had impaired the defendant's cognitive abilities at the time of the offense, Dr. Werner indicated that, metaphorically speaking, the defendant had been operating on "one [of eight] cylinders." According to the

---

**2.** The government has contends that § 666(a)(1)(A) is a general intent crime. However, § 666 is analogous to embezzlement which courts have historically construed as a specific intent offense. The language of § 666 is identical to that of § 664—which prohibits theft and embezzlement from employment benefit—and courts have found that section to be a specific intent crime. *See United States v. Busacca,* 936 F.2d 232, 240 (6th Cir.1991); *Young v. West Coast Industrial Relations Association, Inc.,* 763 F.Supp. 64 (D.Del.1991), *affirmed,* 961 F.2d 1570 (3d Cir.1992). Finally, an unpublished case from the Ninth Circuit, *United States v. Brown,* 12 F.3d 1108, 1993 WL 503204 (9th Cir.1993) has defined § 666 as a specific intent crime.

defendant, Dr. Werner's testimony will establish that while,

> Mr. Richards had control of his actions in such a way that he knew that he was indeed transferring the money from one account to another, but that it was not his intention to steal the money, defraud anyone of the money, misappropriate the money, or any other way deprive the rightful owner of this money. He believed that he was not committing a crime, but was merely moving the money to save his business.

Defendant's Letter Br. at 8 (dated May 21, 1998).

As for Mr. Schumacher, the defendant has introduced this testimony to establish that Mr. Richards' symptoms were present in 1989. Mr. Schumacher has known the defendant for thirty-five years and worked closely with the defendant on the RRH projects. In 1989, Mr. Schumacher started noticing inconsistencies in the defendant's personality. Whereas the defendant had always been extremely "meticulous" in his business affairs prior to the end of 1989, he suddenly became distracted. He would hide away in his office for the day and refuse to meet with anyone. By 1990, he no longer cared. This lack of focus became so pronounced that Schumacher suggested to the defendant that he seek "help." For the most part, the defendant has offered Schumacher's testimony to confirm that the defendant exhibited the symptoms of Major Depression Disorder at the time the offense was allegedly committed. During its cross-examination, the government attacked Mr. Schumacher on credibility grounds, but the court need not address those arguments here.

■■ Even if the court assumes that the defendant was suffering from an extreme case of Major Depression Disorder at the time the offenses were committed, the defendant has not offered a "legally acceptable theory of lack of mens rea." He has failed to establish the requisite link between the specific psychiatric evidence and the lack of mens rea. The offenses charged in this case—Sections 658 and 668—are embezzlement type offenses which require some type

of specific intent to defraud or knowingly convert.[3] At best, the defendant's psychiatric evidence establishes that he either thought that he was not doing anything wrong or that he was only borrowing the money despite the fact that he purposefully took it. That theory is entirely inadequate.

It is well established that "a good faith intent to return embezzled funds does not negate a showing that the defendant acted with the requisite criminal intent to embezzle the funds in the first instance." *See United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991). Similarly, Richards cannot negate specific intent on the grounds that his mental disorder made him believe that he was either merely borrowing the money or not actually stealing it. It is not pertinent whether he actually knew that he was committing a crime. Ignorance of the law is no excuse.

■ In *United States v. Young*, 955 F.2d 99, 102 (1st Cir.1992), the defendant embezzled money from a veteran's fund of which he was the guardian. Although he served as the funds's guardian, he made an unauthorized withdrawal from the account in exchange for promissory notes made to himself as guardian. As with Mr. Richards, the defendant had taken the money to alleviate the financial troubles in which he and his family had found themselves. He then invested the money in a horse and a racehorse investment partnership which ultimately failed. In his defense, the defendant argued that he had not embezzled the money because he had simply "borrowed" it and had not "appropriated" it. The court rejected this defense because

> a bank teller who plays the horses with the bank's money has embezzled it, even if he wins and replenishes the till, even with interest. [The defendant's] borrowing of the money is what constitutes the misappropriation.... [T]he use of loan documents will not legitimate acts otherwise constituting embezzlement.

*Id.*

United States v. Young, 955 F.2d 99, 102 (1st Cir.1992).

---

**3.** Conversion within the meaning of embezzlement statutes is a fraudulent appropriation. *See*

Analogously, even if Richards believed that he was "borrowing" the money or that he was not actually doing something illegal because his intentions were good, he "embezzled" the money as long as he purposefully and deliberately took the money. Because there is no psychiatric evidence which even intimates that Richards did not purposefully withdraw money from the Reserve Accounts or fail to make transfers, the defendant has not offered a legally acceptable theory negating mens rea.

Of further note, the defendant has made much of the fact that he acted out of desperation. I fail to see how desperation is a mental disorder which could negate mens rea. Many embezzlers act out of desperation, but that does not make them any less culpable. Whether someone embezzles money to save a business or for some self-indulgent purpose, it is still illegal. One might develop sympathy for the former, but that does not mean that such conduct should be excused.

### IV. Alternative grounds for finding the evidence inadmissible

 Finally, apart from my application of *Pohlot* to the instant case, Richard's mental disease evidence would be inadmissible as "misleading" under Rule 403 of the Federal Rules of Evidence. In *United States v. Schneider*, 111 F.3d 197, 202 (1st Cir.1997), the court rebuffed the defendant in his efforts to introduce mental disease evidence that he was "depressed" and had "impaired judgment." The defendant had wanted to use this evidence to negate the specific intent to defraud element of his mail and wire fraud counts. The First Circuit concluded that the evidence was relevant to the extent that it went "some distance to negate intent to deceive" without going far enough.[4] *See Id.* at 202–3. However, its "capacity to mislead the jury substantially outweighed its limited relevance." *Id.* at 203. According to the court, a jury could easily and improperly think that defendant's medical condition amounted to temporary insanity or ameliorates the of-

fense. *See Id.* Similarly, the evidence in the instance case, if admitted, is so misleading that it should be excluded under Rule 403.

### V. Conclusion

For reasons detailed in this opinion, the court finds that Richard's mental disease evidence is **INADMISSIBLE AT TRIAL.**

---

4. The court recognized that because this evidence could never go far enough, it might not satisfy *Pohlot,* but the court employed a more liberal evidentiary standard than that of the Third Circuit.