**UNITED STATES of America,**

v.

**Albert J. PIRRO, Jr. and Anthony G. Pirro, Defendants.**

**No. S2 99 CR. 182(BDP).**

United States District Court,
S.D. New York.

Dec. 3, 1999.

Elliot B. Jacobson, Cathy Siebel, Justin S. Weddle, United States Attorney's Office, White Plains, NY, for U.S.

Robert J. Giuffra, Sullivan & Cromwell, Gustave H. Newman, Annemarie Hassett, Newman Schwartz & Greenberg, New York City, Michael G. Santangelo, Keogh & Santangelo, Anthony J. Servino, Bank, Sheer, Servino & Seymour, White Plains, NY, for Defendant Albert J. Pirro, Jr.

Roger L. Stavis, Stavis & Kornfeld, New York City, for Defendant Anthony G. Pirro.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

A Sixty–Seven Count Superceding Indictment charges Albert Pirro, Jr., and his brother and tax preparer, Anthony Pirro, with a number of federal income tax related offenses.[1] Albert Pirro has moved to sever his trial from the trial of his brother. Anthony Pirro, on the other hand, has moved for severance of Counts Sixty–Two through Sixty–Six charging him, *inter alia*, with signing false tax returns for his own business, Anthony G. Pirro, CPA, P.C. For the reasons stated below, these motions are granted in part and denied in part.

1. *Severance of Defendants*

Albert Pirro moves for severance pursuant to Fed.R.Crim.P.Rule 14 contending that he is entitled to a separate trial so that he may: (1) call Anthony Pirro as a witness to obtain essential exculpatory testimony, (2) offer evidence of Anthony Pirro's 1991 cocaine conviction, drug use and psychological problems, and (3) ask the jury to draw inferences in his favor and against Anthony Pirro if, as anticipated, Anthony Pirro invokes his Fifth Amendment privilege and declines to testify.

These justifications are to be analyzed in accordance with the reasonably well-understood principles underpinning Rule 14 which provides in part: "If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment ..., the court may order ... separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed.R.Crim.P. 14.

In 1993 the Supreme Court substantially elevated the threshold for obtaining severance of properly joined offenses and defendants: "When defendants properly have been joined under Rule 8(b) a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific tri-

---

1. Specifically, Count One charges that between 1988 and 1997, Albert and Anthony Pirro conspired to: (1) defraud the United States by impeding the Internal Revenue Service's ("IRS") assessment and collection of income taxes, (2) evade taxes due on Albert Pirro's personal returns, (3) sign false personal and business tax returns, and (4) prepare false personal and business tax returns. Counts Two through Five charge Albert and Anthony Pirro jointly with evading taxes on Albert Pirro's personal returns for 1992 through 1995. Counts Six through Thirty–Three and Sixty–Seven charge Albert Pirro with signing false tax returns for some of his businesses for tax years ranging from 1992 through 1996. Counts Thirty–Four through Sixty–One charge Anthony Pirro with preparing false tax returns for some of Albert Pirro's businesses during the same period (referred to as the "Albert/Anthony Pirro Counts"). Counts Sixty–Two through Sixty–Five charge Anthony Pirro with signing false tax returns for his accounting business, Anthony G. Pirro, CPA, P.C., for tax years 1993 through 1996. Count Sixty–Six charges Anthony Pirro with tampering with a witness who was to testify before the grand jury regarding Anthony Pirro's personal purchases (Counts Sixty–Two through Sixty–Six are referred to as the "Anthony Pirro Counts").

al right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The Supreme Court further stated that a defendant seeking severance must show how a joint trial would subject him to "legally cognizable prejudice." *Id.* at 541, 113 S.Ct. 933.

■ Under Rule 14, in view of the preference in the federal system for the joint trial of defendants indicted together, a defendant bears a heavy burden of showing that joinder will result in the prejudice contemplated by *Zafiro*. *See, e.g., United States v. Amato*, 15 F.3d 230, 237 (2d Cir.1994); *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990) (defendant must show he was so severely prejudiced by spillover evidence that joint trial constituted a miscarriage of justice), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991). The disposition of a motion for severance under Rule 14 is, of course, discretionary. *See United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir. 1987).

### A. Exculpatory Evidence

Specifically, Albert Pirro contends that this Court should grant a severance because "... the only person in a position to exculpate him of the tax crimes charged in the indictment is codefendant Anthony Pirro" and his "central defense is that he relied on Anthony to prepare his taxes, that Albert was unaware of the numerous errors that Anthony made in preparing the tax returns of Albert and Albert's various businesses, and that those errors were caused by Anthony's incompetence and his personal, psychological and legal problems." (Albert Pirro Memorandum of Law, pages 1, 14). Further, "Anthony is the critical witness in support of Albert's defense that the errors in Albert's tax returns were the result of Anthony's negligence, and not of any criminal agreement between Albert and Anthony." *Id.* at 15.

Albert asserts that Anthony, as the tax preparer, "is in the best position to testify as to the preparation of the return, including whether the taxpayer directed the accountant to prepare the return falsely." *Id.* This expected testimony from Anthony is characterized as "essential exculpatory testimony" unavailable in a joint trial but available through Anthony's testimony, were severance granted.

Were these compelling hypotheticals actually reflective of the prospective trial evidence, the case for a severance to obtain it would be a substantially stronger one. The problem is that the record on this severance motion virtually forecloses the likelihood that any such testimony will ever surface. Codefendant Anthony Pirro does not support Albert's severance motion. In fact, Anthony's attorney states categorically that "there exists no possibility of Anthony Pirro testifying in support of Albert Pirro's defense at a separate trial, and we are aware of no other grounds which would justify a severance of defendants." (Stavis Aff., ¶ 17). Thus, severance is opposed, not only by the government, but by Albert Pirro's codefendant as well.

■ In *United States v. Finkelstein*, 526 F.2d 517 (2d Cir.1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976), our Circuit listed four factors to be considered in weighing a motion to sever: (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment. *Finkelstein*, 526 F.2d at 523–24. While no single facet of this test is dispositive, the first is of particular importance and the overall application of the test should insure, as *Zafiro* counsels, the reliability of the jury's determination and the protection of specific trial rights.

Considering Anthony Pirro's counsel's adamant statement that his client will not testify at separate trials, clearly the first prong of the *Finkelstein* test has not been met. *See United States v. Taylor,* 562 F.2d 1345, 1362 (2d Cir.1977) (holding district court did not abuse its discretion in denying severance, in part because the defendant had failed to establish, as *Finkelstein* require[d], that the codefendant would waive his Fifth Amendment privilege given the codefendant's repeated assertions that he would not answer any questions until instructed by the court that he had no Fifth Amendment right to refuse to answer).

Albert Pirro's reliance on *United States v. Gleason,* 259 F.Supp. 282 (S.D.N.Y. 1966), is misplaced. In *Gleason,* decided long before *Finkelstein* and *Zafiro,* the district court granted a defendant's motion for severance in a tax fraud case from her co-defendant tax preparer because she wished to call the preparer as a witness expecting exculpatory testimony. The Court, while noting that the defendant taxpayer had already testified on her on behalf, granted a severance in part because it believed a substantially greater likelihood existed that the tax preparer would testify at a severed trial and that the "relatively small dimensions" of the case would not "entail heavy burdens of time and expense." *Id.* at 285. Here, however, as noted, the record on this motion presents no realistic possibility that Anthony Pirro would testify at a severed trial and judicial economy, as discussed more fully *infra,* weighs heavily in favor of a single trial of defendants jointly indicted, especially since they are alleged to be co-conspirators.

The failure on the first prong of *Finkelstein* makes the second somewhat academic, but, even so, the record on this severance motion indicates that much of the proffered testimony that Albert Pirro seeks to introduce through Anthony Pirro—were it available—would be cumulative. To the extent that Albert Pirro

wants to show that Anthony Pirro's preparation of his tax returns was inept, he has not adequately demonstrated that this evidence would not be available from a number of other sources including witnesses, documents such as accountants' workpapers along with appropriate expert testimony about them. Further, to the extent that Albert Pirro wants to argue that he possessed little knowledge of the federal tax laws, and, consequently, relied entirely on Anthony Pirro to prepare his returns, those propositions can be proved by documents, by lay witnesses, by appropriate experts and by Albert Pirro's own testimony to that effect. *See United States v. Wilson,* 11 F.3d 346, 354 (2d Cir.1993) (noting, in connection with a motion for severance, that testimony of codefendant was cumulative because the defendant could testify).

Those problems with the first and second prongs mean that the third prong of *Finkelstein*—judicial economy—weighs especially heavily in favor of a single trial. As previously noted, Albert and Anthony Pirro are charged with conspiracy, tax evasion and the filing of multiple false tax returns. Thus, if the trials were severed there would be a substantial duplication of efforts.[2] The Supreme Court has observed that joint trials of defendants indicted together "play a vital role in the criminal justice system" as they "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *see Bruton v. United States,* 391 U.S. 123, 134, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). As the *Richardson* Court explained:

It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, re-

**2.** The Government has proffered that it antici-   pates a joint trial lasting one to two months.

quiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests and justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. 481 U.S. at 210, 107 S.Ct. 1702.

■ On a number of occasions the Second Circuit has echoed this strong public policy in favor of joint trials. *See United States v. Cardascia,* 951 F.2d 474, 482 (2d Cir.1991); *United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983) (where "defendants ... are jointly indicted [they] should be jointly tried"). Moreover, the presumption in favor of a joint trial is especially compelling where, as here, the crime charged involves a "common scheme or plan." *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *see also Cardascia,* 951 F.2d at 482.

Further, the cases are legion that there is a strong public interest in joint trials where, as here, the defendants are both charged in the same conspiracy. *See United States v. Cihak,* 137 F.3d 252, 259 (5th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 118, 142 L.Ed.2d 95 (1998); *United States v. Tipton,* 90 F.3d 861, 883 (4th Cir.1996), *cert. denied,* 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997); *United States v. Edwards,* 69 F.3d 419, 434 (10th Cir.1995), *cert. denied,* 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); *United States v. Edwards,* 36 F.3d 639, 647 (7th Cir.1994); *United States v. Hofstatter,* 8 F.3d 316, 323 (6th Cir.1993), *cert. denied,* 510 U.S. 1131, 114 S.Ct. 1101, 127 L.Ed.2d 413 (1994). Thus, the facts presented by this case and the teachings of our Circuit strongly demonstrate that judicial economy favors a joint trial.

■ Since Anthony Pirro opposes severance, the record before this Court is not sufficiently clear what defenses will be proffered at trial, much less that those proffered defenses will necessarily be antagonistic, such that a jury will have to choose between them. In any event, even if the defenses turn out to be antagonistic, defendants who point the finger at each other nevertheless may be tried together since "mutually antagonistic defenses are not prejudicial per se." *Zafiro,* 506 U.S. at 538, 113 S.Ct. 933. Thus, even testimony at trial by a codefendant that is adverse to the moving defendant does not necessarily require severance, so long as the testimony is relevant and competent, and bears on the issue of guilt or innocence. As the *Zafiro* Court held,

> a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.

*Id.* at 540, 113 S.Ct. 933; *see also United States v. Haynes,* 16 F.3d 29, 32 (2d Cir. 1994). Moreover, the fact that the defendants could have varying degrees of exposure or might be confronted with varying amounts of evidence does not require separate trials. *See United States v. Locascio,* 6 F.3d 924, 947 (2d Cir.1993); *Cardascia,* 951 F.2d at 483 ("[D]isparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance."). Also, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro,* 506 U.S. at 540, 113 S.Ct. 933.

Further, the cases teach that where a risk of prejudice exists, measures less

drastic than severance, such as proper limiting instructions, will usually adequately address that risk, because " 'juries are presumed to follow their instructions.' " *Zafiro*, 506 U.S. at 540, 113 S.Ct. 933 (quoting *Richardson v. Marsh*, 481 U.S. at 211, 107 S.Ct. 1702).[3]

### B. Cocaine and Psychological Evidence

At the core of Albert Pirro's severance motion is his contention that separate trials would facilitate his introduction of evidence of Anthony Pirro's drug use, drug-related conviction and psychological problems. Albert Pirro urges severance to enable his presentation to the jury of these matters since "forbidding the jury to consider evidence that might negate willfulness [in a criminal tax case] would raise a serious question under the Sixth Amendment's jury trial provision." *Cheek v. United States*, 498 U.S. 192, 203, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

Specifically, Albert claims he should "be permitted to introduce evidence and to argue at trial that ... Anthony began to suffer from personal problems, which culminated in Anthony's cocaine conviction and his sentence of three years' probation, and that Anthony's mental troubles (not a criminal conspiracy) were the reason why Albert's complicated tax returns were improperly prepared." (Albert Pirro Memorandum of Law, page 24).

The events behind this contention surround Anthony Pirro's arrest in August 1991 for possession of cocaine, which resulted in a three-year suspended sentence and probation. At the time of his sentencing, Anthony Pirro's psychologist advised the court that he required treatment to work on personal issues, including "the emotional aftermath of divorce, excessive gambling, how to appropriately stand up for his rights in business, and relationships with his parents and siblings."

Anthony Pirro does not support severance on this ground, apparently denying both the relevance and admissibility of evidence of his conviction and drug use proffered, not by him or the government, but by his brother. The government also disputes the viability of this justification for severance contending that Albert Pirro "... cannot be serious when he suggests that he intends to defend this case by blaming his brother's cocaine use and personal problems for the fact that he, Albert Pirro, signed and submitted to the IRS tax returns which significantly understated his adjusted gross income by approximately one-third over a period of five years." (Government Memorandum of Law, page 29)

To be entitled to a severance to introduce the proffered evidence, Albert Pirro must identify a specific trial right that is compromised or show how, absent severance, a jury will be prevented from making a reliable judgment about guilt or innocence. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.

■ The second aspect of this test has not been met as no adequate showing has been made that, absent a severance, a jury's ability to determine the appropriate facts and properly apply the law to them will be impaired were the defendants tried together. With respect to the first aspect, Pirro has identified no specific trial right that would be compromised absent severance. He correctly argues that he is entitled to a full, appropriate opportunity to contest willfulness. That opportunity, is, of course, constrained by the Federal Rules of Evidence which obviously apply in a severed as well as in a joint trial.

Whether or not the proffered evidence of drug use and psychological impairment is admissible at all is the subject of motions *in limine* not yet resolved. At this point, where the issue is severance, the

---

**3.** In light of Anthony Pirro's Counsel's affidavit stating that Anthony would not testify at a severed trial, the Court need not address the fourth prong of *Finkelstein* since it is clear there would be no witness subject to substantial impeachment.

Court concludes that Albert Pirro's proffer does not establish the existence of a specific trial right to adduce evidence that might not comply with Rules 401 and 403 and where it has not been demonstrated that any residual prejudice arising from joinder could not be cured by appropriate limiting instructions.

Through the Insanity Defense Reform Act of 1984, §§ 18 U.S.C. 17, 4241–4247, Congress limited the role of mental disease evidence in criminal trials. While insanity, as defined by the statute, may still be a viable affirmative defense, the statute has eliminated all other affirmative defenses or mitigation evidence predicated on the existence of a mental disease or defect. *United States v. Richards,* 9 F.Supp.2d 455, 457 (D.N.J.1998) (citing *United States v. Westcott,* 83 F.3d 1354, 1357–1358 (11th Cir.1996)).

As the Eleventh Circuit noted, evidence that a defendant lacks the capacity to form *mens rea* is to be distinguished from evidence that the defendant actually lacked *mens rea.* "While the two may be logically related, only the latter is admissible to negate the *mens rea* element of an offense." *Westcott,* 83 F.3d at 1358. Courts must not allow the insanity defense to be "improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a diminished responsibility or some similarly asserted state of mind which would serve to excuse the offense." *United States v. Cameron,* 907 F.2d 1051, 1066 (11th Cir. 1990). Nevertheless, a defendant may introduce mental disease evidence for the purpose of negating the *mens rea* element of the offense. *Richards,* 9 F.Supp.2d. at 457.

Apart from the statutory restrictions on the use of this type of evidence, other considerations loom large. Evidence of Anthony Pirro's drug use can be highly prejudicial since it tends to be "propensity" evidence dressed up as scientific testimony. *See* Fed.R.Evid. 404(b), 403. The evidence also has an inherent tendency to distract or confuse the jury, especially where, as here, a defendant in an effort to negate his own willfulness offers the evidence to show the drug-impaired mental state of a codefendant who apparently denies the impairment. *See United States v. Schneider,* 111 F.3d 197, 203 (1st Cir.1997) (holding district court was free to exclude mental condition evidence on the ground that its capacity to mislead the jury substantially outweighed its limited relevance). Moreover, while still subject to other tests under the Federal Rules of Evidence—for example Rule 403—the admissibility of such evidence requires some demonstration of a "relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *United States v. Childress,* 58 F.3d 693, 730 (D.C.Cir.1995) (citing *Cameron,* 907 F.2d at 1067 n. 31).

Mental disease evidence is generally excluded where no link is demonstrated between the evidence and the defendant's *mens rea* or where the defendant could not demonstrate that he actually lacked *mens rea* at the time of the offense because of any psychological defect. *See Cameron,* 907 F.2d at 1067 (upholding exclusion of psychiatric evidence in narcotics case because defendant could not explain connection between such evidence and her alleged lack of intent to distribute cocaine); *United States v. Towns,* 19 F.Supp.2d 67, 71 (W.D.N.Y.1998) (holding evidence that defendant suffered from schizophrenic disorder, alcohol dependance and borderline intellectual functioning inadmissible because no link shown between defendant's psychological disorders and his lack of intent to rob bank; evidence of psychiatric abnormalities suffered by the defendant on day of robbery were admitted, however, to corroborate defendant's argument that his feeling of depression led him to fake bank robbery so that he could get medical attention); *Richards,* 9 F.Supp.2d at 459 (holding evidence that defendant suffered from extreme depression inadmissible because

no connection shown between that evidence and lack of *mens rea* ).

Here, it is not Anthony Pirro who desires to introduce evidence regarding his past problems, but rather his brother Albert Pirro, in an attempt to prove Anthony Pirro's mental or personal problems—not a criminal conspiracy—caused mistakes in the tax returns.

Albert Pirro's proffer, however, makes it far from obvious that he will be in a position to show how Anthony Pirro's cocaine use or psychological problems had any effect upon the preparation of Albert Pirro's taxes. For example, Albert Pirro proffers that "[a]lthough Anthony testified that he had been free of drugs between his arrest in August 1991 and his sentencing hearing on June 24, 1992, his underlying psychological problems *may well have* continued to affect his ability to prepare Albert's complicated taxes." (Albert Pirro Memorandum of Law, page 7, note 3). Anthony, as previously noted, distances himself from this testimony, disputing its factual validity, its relevance, as well as its admissibility. Through counsel, he avers that he will neither discuss these matters with his brother's counsel nor submit to medical or psychological testing to support his brother's theories. As the government notes, it too, in all likelihood would not be able to conduct a mental examination of Anthony since he has not placed his mental state in issue. Fed.R.Crim.P. 12.2(c); *United States v. Mogenhan*, 168 F.R.D. 1, 2–3 (D.D.C.1996). The proffer is bereft of any details of Anthony's drug use, containing no indication of when, in what quantities or under what circumstances this use occurred.

It would be, conservatively stated, difficult now to project how, for example, a psychiatrist or a psychopharmacologist who had never examined or even spoken with Anthony could properly testify about his mental state or his behavior in a manner that would assist a jury. The case law makes clear that speculation that psychological problems generally affected Antho-

ny Pirro's ability to prepare taxes is probably insufficient to link evidence of mental problems to any errors in the returns. *See Childress*, 58 F.3d at 730; *see Cameron*, 907 F.2d at 1067; *see Towns*, 19 F.Supp.2d at 71.

Assuming all these barriers were overcome, relevance and prejudice problems would still loom large. *See* Fed.Rules Evid. 401, 403. Most of the charges in the superceding indictment fall under 26 U.S.C. § 7206(1) which requires the Government to prove beyond a reasonable doubt essentially that Albert Pirro signed returns under penalties of perjury that were not true as to material matters and that, in so doing, he acted knowingly and willfully. It is far from clear what probative value Anthony's drug use would be to Albert's efforts to contest the existence of these elements. There are, of course, other counts to the Indictment drawn under different statutes, but they nearly all present similar relevance problems as well as extremely difficult issues under Rule 403, the resolution of which must await trial. In sum, the reasons proffered by Albert Pirro in support of the admission of testimony concerning Anthony's mental state in the early 1990's are simply too conjectural and too problematic to constitute a specific trial right, the protection of which mandates severance.

### C. Desire to Commit on Co–Defendant's failure to Testify

Albert Pirro contends that he is entitled to a severance to permit him to comment on Anthony Pirro's failure or refusal to testify. This contention is based on dicta found in the Fifth Circuit's opinion in *De-Luna v. United States*, 308 F.2d 140, 141 (5th Cir.1962), where the court noted:

> If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately.

This *DeLuna* rationale, however, has been rejected by virtually every other circuit that has considered it. *See United States v. McClure*, 734 F.2d 484, 491 (10th Cir. 1984); *United States v. McKinney*, 379 F.2d 259, 265 (6th Cir.1967); *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987).

A defendant seeking to lay blame on a codefendant is not without options merely because he is prohibited from asking a jury to draw inferences from his codefendant's silence:

> Should a defendant seek to lay blame upon a nontestifying codefendant, he can always take the stand and testify against him. Such testimony would be entitled to great probative value; a jury's decision resting upon this evidence would, in our view, rise to a fairer level than one influenced by self-serving implications drawn by an attorney regarding a codefendant's silence.

*McClure*, 734 F.2d at 491.

In *United States v. Marquez*, 319 F.Supp. 1016, 1023 (S.D.N.Y.1970), *aff'd*, 449 F.2d 89 (2d Cir.1971), *cert. denied*, 405 U.S. 963, 92 S.Ct. 1167, 31 L.Ed.2d 239 (1972), Judge Weinfeld of this District rejected the *DeLuna* rationale, in language applicable here, stating,

> The assertion of a constitutional right which deprives both sides of the witness' testimony should give rise to no inference, favorable or unfavorable, with respect to the nature of the witness' answer had he testified. If in fact the invocation of the Fifth Amendment privilege is of such dimension that it permits no inference of guilt or criminal proclivities, it is without probative value on the issue of the defendant's guilt or innocence, and neither the prosecution nor the defense should be permitted to comment thereon.

■ Here, since severance would present most of the burdens of separate trials—a significant duplication of resources, the risk of inconsistent verdicts, substantial inconvenience to witnesses—without the attendant benefits of severance—typically, insuring the reliability of the jury's determination of the charges in the indictment and the protection of specific trial rights—Albert Pirro's motion to sever is denied.

## 2. Severance of Anthony Pirro Counts

Anthony Pirro moves for severance of the Anthony Pirro Counts charging him alone with filing false tax returns for his accounting firm and attempting to influence the testimony of a grand jury witness from whom he purchased personal goods, on the grounds that these Counts are joined improperly under Fed.R.Crim. P.Rule 8(b), and prejudice under Rule 14. For the reasons that follow, the motion is granted. Rule 8(b) provides:

> (B) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b).

Where, as here, multiple defendants are charged in the same Indictment, Rule 8(b) governs motions for severance. *See United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988). "Thus, multiple defendants may be charged with and tried for multiple offenses only if the offenses are related pursuant to the test set forth in Rule 8(b), that is, only if the charged acts are part of a 'series of acts or transactions constituting ... offenses.' " *Id.*

The Government contends that the proper Rule governing Anthony Pirro's motion

is 8(a), not 8(b). *See United States v. Biaggi,* 705 F.Supp. 852, 855–858 (S.D.N.Y.1988). Rule 8(a), which is a less stringent test than 8(b), provides that joinder of offenses against a single defendant is proper when they are: (1) based on the same act or transaction, or (2) based on two or more acts or transactions connected together or constituting parts of a common plan or scheme, or (3) of the same or similar character. *Turoff,* 853 F.2d at 1042. This Court will analyze the motion, however, under Rule 8(b) because our Circuit has stated that "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is [to be] made under 8(b) rather than 8(a)." *Id.* at 1043.

The Counts charging Anthony Pirro with filing false tax returns for his own accounting practice and attempting to influence the testimony of a grand jury witness are simply not unified with the Albert/Anthony Pirro Counts relating to the alleged long running conspiracy between Anthony and Albert Pirro to evade Albert Pirro's tax liability and the filing of false income tax returns for Albert Pirro and Albert Pirro's companies.

■ ·The Anthony Pirro Counts relate solely to Anthony Pirro, the returns filed by his accounting practice and his alleged tampering with one of his clients who was a grand jury witness. Consequently they are not unified by a substantial identity of facts or participants, nor do they arise out of a common plan or scheme involving him and Albert Pirro. *See United States v. Attanasio,* 870 F.2d 809, 815 (2d Cir.1989). Thus, pursuant to Rule 8(b), the Anthony Pirro Counts (62–66) are improperly joined in the Indictment and his motion for severance is granted.[4]

### 3. *Expert Disclosure*

Anthony Pirro moves pursuant to Fed. R.Crim.P. 16(a)(1)(E) for an order from the Court directing immediate expert witness disclosure from the Government. Rule 16(a)(1)(E) contains "no specific timing requirements," but the parties are expected to comply "in a timely fashion." Advisory Committee Notes to 1993 Amendment to Fed.R.Crim.P. 16.

■ The Government indicates that it expects to call in its case-in-chief at least one expert witness and possibly two. The Government avers that it will undertake to provide a timely formal summary from its tax expert witness, and any reports from a handwriting expert, if it decides to call one, upon receipt. If the Government does intend to call either of these witnesses or any other witness as an expert, the Government must provide information as required by Rule 16(a)(1)(E), no less than fifteen days prior to trial. *See U.S. v. Costen,* 95 Cr. 517(LMM), 1996 WL 137483, at *2 (S.D.N.Y. Mar. 27, 1996) (expert summaries to be provided in compliance with Rule 16(a)(1)(E) no later than 15 days before trial); *United States v. DeYian,* 94 Cr. 719(DLC), 1995 WL 368445, *3 (S.D.N.Y. June 21, 1995) (summaries to be provided within 30 days of receipt, and in no event later than two weeks prior to trial). Anthony Pirro's motion for expert disclosure is resolved accordingly.

## CONCLUSION

For the reasons stated above, (1) Albert Pirro's motion to sever his trial from codefendant Anthony Pirro is denied, and (2) Anthony Pirro's motion to sever the An-

---

**4.** Notwithstanding the misjoinder under 8(b), even were joinder proper under Rule 8, the court would, in its discretion, grant a severance under Rule 14 to prevent undue prejudice. *See United States v. Amato,* 15 F.3d 230, 237 (2d Cir.1994). While the Government contends that evidence of the Anthony/Albert Counts would be admitted in a separate trial of the Anthony Pirro Counts, the viability of this argument can be more adequately addressed at trial.

thony Pirro Counts from the Albert/Anthony Pirro Counts is granted.